UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RICHARD THOMPSON,**<br><br>　Defendant. | **Case No. 25-CR-271 (JEB)** |

**EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE
AND *DE NOVO* REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge Zia M. Faruqi issued on September 24, 2025. The Government first requests that the Court stay Magistrate Judge Faruqi's order releasing the Defendant. The Government further requests that the Court grant a *de novo* review of Magistrate Judge Faruqi's denial of the Government's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm). This Court has the authority to grant a stay to consider this emergency *de novo* review of the Magistrate Judge's order of release.

The Defendant stands before this Court charged with illegally possessing a fully loaded firearm, with one round in the chamber and fifteen rounds in the magazine. Despite his prior felony conviction for Carrying a Pistol without a License (CPWL) in D.C. Superior Court case 2022-CF2-002173, his prior conviction for Possession of an Unregistered Firearm in D.C. Superior Court case 2020-CDC-009664, and his knowledge that it was illegal for him to possess a firearm, the Defendant carried a loaded gun concealed on his person while in the community. The Defendant's recent criminal history of unlawful gun possession, as well as his prior noncompliance

1

with conditions of release, puts the community at risk. Pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

## BACKGROUND

*The Instant Offense*

On or about April 7, 2025, at approximately 7:40 p.m. near the 1900 block of I Street Northeast, Washington D.C., 20002, members of the Metropolitan Police Department (MPD) of Washington, D.C.'s Robbery Suppression Unit (RSU), were on duty, dressed in plain clothes wearing tactical vests with the word "POLICE" written on the front and back, when they observed a male, later identified to be Richard Thompson (herein referred to as Thompson), walking towards the front passenger side of an Infinity sedan, bearing Virginia license plates "TGL3012", while looking back at the police.

The Infiniti sedan proceeded to drive away but was ultimately stopped by MPD adjacent to 1946 I Street Northeast, Washington, D.C. 20002 because the vehicle had a heavy tint in violation of D.C. Code § 50–2207.02. During the stop, Thompson exited the vehicle without any direction to do so. Officers ordered him back in the car. Then officers asked him to roll down the windows, to which he ignored. Before MPD approached the vehicle, officers observed Thompson with a marijuana cigarette and hunching forward while seated in the front passenger seat. Thompson made furtive movements towards his front, right side and under the front passenger floorboard of the gray Infinity. All these movements were voiced as a precaution to officers. Moreover, officers recognized these characteristics by individuals to be in possession of contraband to include firearms based on numerous previous stops and arrests.

Thompson was immediately detained by MPD. Once a protective pat down was conducted, a Glock 29, 10mm pistol, bearing Serial Number BVYA562, containing one round of ammunition

in the chamber and fifteen rounds inside a full magazine, was found in Thompson's front waistband. *See* Figure 1. Firearms and ammunition like the recovered semi-automatic pistol and ammunition are not manufactured within the District of Columbia. Therefore, the firearm and ammunition traveled in and affected interstate commerce.



*Image 1: Police photograph of Thompson's waistband area, containing recovered Glock pistol*

Based on a search of law enforcement databases, Thompson pled guilty and convicted in Washington, D.C. Superior Court of Carrying a Pistol Without a License, and was sentenced in 2022 to one year imprisonment, with one year suspended. Thompson was released on one year of probation. Thus, Thompson was aware at the time of this offense that he had been convicted of offenses punishable by terms of imprisonment greater than a year. A law enforcement database check revealed that Thompson did not have a Concealed Carry License in the District of Columbia.

*Defendant's Criminal History*

As previously stated, the Defendant was convicted of Carrying a Pistol without a License in case number 2022-CF2-002173. The Defendant was also convicted of Possession of an unregistered firearm in case number 2022-CDC-009664, to which his probation was revoked due to his 2022 conviction.

**ARGUMENT**

**I.   This Court Has the Authority to Grant the Motion to Stay Release Pending a *De Novo* Review**

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory."). An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained. *Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No.: 2:23-cr-00044-GMN-VCF, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, "stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision." (Resp. 3:9-24) (collecting cases). Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.").

The Government is aware of the Honorable Magistrate Judge Zia M. Faruqi's recent

decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025).  Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending the government's request for *de novo* review of the Magistrate Judge's release order, that the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009).  The Government, however, is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay to present the merits of the requested detention to the district court judge.

Thus, the government seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors.  As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004).  Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia.  *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024).  As these courts have recognized, the "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

**II.     *De Novo* Review of the Magistrate's Release Order**

As an initial matter, a defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Further, Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, ...

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the Government's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there is no condition, or combination of conditions, that

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

7

would assure the safety of the community or the defendant's appearance at future proceedings.

### A. Nature and Circumstances of the Offense Charged

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying significant penalties. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the Defendant was carrying a fully loaded firearm, easily accessible in the waistband of his pants. The weapon was readily accessible to the Defendant, and it was fully loaded with one round of 10 mm ammunition in the chamber and fifteen rounds in the magazine. Here, there is no indication that the weapon was inert or otherwise inoperable.

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the

circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020).  The firearm recovered from the Defendant had many of these troubling characteristics, and more broadly, the firearm was fully loaded and ready to fire when it was recovered.  Simply stated, unlawful gun possession is so problematic, especially by someone with the Defendant's escalating criminal history, because of the number of violent gun crimes committed in the District.

Given the above, the nature and circumstances of this offense weigh heavily in favor of detention.

### B. Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government's case against the Defendant is strong.

First, the Defendant was lawfully stopped when law enforcement observed the vehicle the Defendant was in had windows tinted in violation of the D.C. Code. Through the Defendant's actions, officers ordered him out of the vehicle and conducted a protective pat down. Officers then found a fully loaded firearm in the waistband of the Defendant's pants. The conduct of the Defendant was witnessed by at least half dozen officers on scene, as was the Defendant's attempts to frustrate the officer's check for weapons during the arrest.  All of this is captured on the body worn camera of the officers. Notably, a federal grand jury found probable cause to support this arrest and returned an indictment against the Defendant.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30.  Instead, "the weight of the evidence against [a] defendant [should]

be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that the Defendant will present a danger to the community if released.

The weight of the evidence against the Defendant for unlawful firearm possession is strong. Here, the Defendant possessed a fully loaded gun in his waistband where he had full access to it. As it relates to the Defendant, the relevant conduct before this Court, which is the Defendant's possession of a loaded gun, was fully captured on body-worn camera, as depicted in pictures above. The evidence of the Defendant's firearm possession is clear, uncontroverted, and supported by the evidence in this case.

**C. History and Characteristics of the Defendant**

The third factor, the Defendant's history and characteristics weigh heavily in favor of detention. The Defendant's record demonstrates a capacity for committing serious felonies and violating release conditions. The information contained in the Pretrial Services Agency Report is

concerning as it demonstrates the Defendant's pattern of possessing firearms in violation of the law continues to escalate. The Defendant's history and characteristics suggest that he will continue to carry loaded firearms into the community.

The Defendant has two prior convictions related to firearms. On August 18, 2021, the Defendant pled guilty to Possession of an Unregistered Firearm in case number 2020-CDC-009664 and sentenced to 180 days incarceration (all suspended) and one year of probation. In the arrest related to this conviction, the defendant was alleged to have discharged a firearm leading law enforcement to execute a search warrant on his home where they found a 9mm Glock 19, a magazine with 17 rounds of 9mm ammunition, and 13 rounds of ammunition—though he was not convicted for discharge of a firearm. *See* Gov. Ex. 1.

Not even a year later, on July 13, 2022, the Defendant pled guilty to Carrying a Pistol without a License in case number 2022-CF2-002173. The Defendant was sentenced to 12 months incarceration (all suspended) and 1 year supervised probation. The Defendant's probation from his 2020 conviction was revoked and he was resentenced to one year of supervised release.

The Defendant's criminal history shows that he repeatedly possesses firearms unlawfully, and his conduct has continued to escalate. Despite a recent term of incarceration and supervision, the Defendant continues his pattern of criminal behavior. He illegally picked up a firearm in the instant case knowing full well that he should not, given that he had already previously served a sentence and was under supervised probation for engaging in the same conduct.

**D. Danger to the Community**

The fourth and final factor, danger to any person or the community posed by the Defendant's release, overwhelmingly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is

11

unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). As noted above, however, the Defendant's continuous escalation in his recidivism establishes that he is a danger to the community.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here the Defendant poses an obvious and articulable threat to the community, as evidenced by his recidivism and his failure to obey court orders. After being given the benefit of multiple suspended sentences, the Defendant unlawfully possessed a firearm again, except this time as a felon. He has shown the Court that he remains a risk to the community as he cannot help but possess firearms, while knowing he is prohibited from doing so.

**III.   GPS Monitoring Cannot Ensure the Safety of the Community.**

Magistrate Judge Faruqui found that the Defendant be placed on GPS monitoring and have a curfew from 6:00 p.m. until 8:00 a.m. while residing at his mother's house. While GPS monitoring may encourage the Defendant to show up to court, it will not stop him from possessing a firearm, which is the crux of the Government's argument. The Defendant has shown that he cannot stay away from guns and the GPS monitor will not deter him, nor will it alert law enforcement or the Court whether the Defendant is in possession of a gun. We will simply have to take the word of a defendant who has a continued history of unlawfully possessing guns. GPS monitoring, therefore, cannot ensure the community's safety.

## CONCLUSION

The Defendant is eligible for pretrial detention. All four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and the Defendant poses a risk of danger to the community. For these reasons, the government requests that the Defendant be detained pending trial, respectfully requests a hearing as soon as practicable, and requests that Judge Faruqui's release order be stayed pending that hearing and the defendant detained.

    Respectfully submitted,

    JEANINE FERRIS PIRRO
    United States Attorney

By:   /s/ *Haley M. Pennington*
    HALEY M. PENNINGTON
    Special Assistant United States Attorney
    Illinois Bar No. 6349612
    United States Attorney's Office
    601 D Street, N.W.
    Washington, D.C. 20530
    Telephone: 202-740-4684
    Email: haley.pennington2@usdoj.gov